528 P.2d 907

**George L. CONDIE, Plaintiff-Appellant,**

v.

**Nellie MANSOR, City Clerk of the City of Blackfoot, Idaho, Defendant-Respondent.**

**No. 11489.**

Supreme Court of Idaho.

Dec. 3, 1974.

Alvin Denman, Denman, Reeves & Ohman, Idaho Falls, for plaintiff-appellant.

J. H. Stout, Stout & Moss, Blackfoot, for defendant-respondent.

SHEPARD, Chief Justice.

Plaintiff below brought this suit for a Writ of Mandate to require the City Clerk of Blackfoot, Idaho, to issue a license for the operation of a business establishment known as the Star Hotel in Blackfoot. This is an appeal from summary judgment entered in that action against plaintiff-appellant and in favor of the defendant. We affirm.

At the core of this case is a controversy between the City Council of Blackfoot, Idaho, and plaintiff-appellant George L. Condie, owner of the Star Hotel in Blackfoot. In 1967, Condie applied to the City of Blackfoot for a hotel license for the year 1968. Contrary to the recommendations of the then city building officials, the City Council ordered the license to be issued. Thereafter temporary licenses were issued for the years 1968 and 1969. In early 1970 the fire chief and the building inspector of Blackfoot recommended that a license for the year 1970 be denied on the grounds that the building was unsafe. On January 20 of that year Condie appeared personally at the meeting of the City Council to discuss the problem. Defects in the building and improvements needed to cure the defects to make the building safe were discussed. As a result of that meeting and others over the following weeks, a temporary license was issued contingent upon Condie complying with a three-year program of repairs designed to make the hotel safe at the end of that time period.

Although reports were received from the building inspector indicating that the necessary improvements to the structure had not been made, nevertheless temporary licenses were issued to Condie covering the period until December 1972. In that month, Condie filed for another license for the year 1973. In January 1973 the City Council heard testimony from the building inspector indicating that Condie had failed to make the necessary repairs previously agreed upon under the three-year program. The Council then gave Condie a 90 day

grace period in which to comply. Condie failed to comply and on May 1, 1973, the City Council declared the hotel to be a fire hazard and voted to deny Condie a license. Thereafter the defendant herein, the City Clerk of Blackfoot, refused to issue the license.

Plaintiff brought this action for a Writ of Mandate ordering the City Clerk to issue a license to operate the hotel and also sought monetary damages. The City Council was not made a party to the suit. An alternative Writ of Mandate issued and thereafter defendant filed a motion to dismiss. The court below treated defendant's motion as one for summary judgment and granted summary judgment to the defendant.

■ The main contention of the plaintiff is simply this: the only requirement set forth in the Blackfoot City Code concerning the issuance of a license to operate a hotel is that the applicant pay a license fee of $10.00 annually. Plaintiff alleges that he did pay the said $10.00, thus fulfilling the only requirement and therefore the City Clerk had a ministerial duty to issue the license. Plaintiff argues therefore the Writ of Mandate should issue.

On the contrary defendant-respondent argues that although Section 1–1302(f) of the Blackfoot City Code would appear to require the clerk to issue a license to everyone who pays the requisite fee, nevertheless, Section 1–1302(h) of the same Code negates this when it requires the clerk to refund the fee of the applicant if the license is disallowed by the City Council. Defendant further argues that this section of the City Code impliedly authorizes the City Council to disallow licenses upon good cause and that the record made herein indicating that the structure is a fire hazard and a danger to human life, is a reasonable ground for disallowance of the license. We agree.

■ We deem it clear that the City of Blackfoot has the power to license a business and to regulate it for the general welfare. I.C. §§ 50–302, 50–307. Appellant does not dispute the applicability of the above sections of the Idaho Code but argues that the City Council of Blackfoot has not been authorized by that City Code to deny a license to operate a hotel, although such might be a hazard to human life. We interpret the provisions of the Blackfoot City Code requiring the City Clerk to refund moneys paid with license applications upon denial of the application by the City Council to impliedly at least authorize the City Council to exercise some discretion in the issuance of a hotel license.

If this court were to accept appellant's argument it would require the City Clerk to issue a license to conduct a business to furnish lodging to the public in a structure which has clearly been shown to be a hazard to human life. To so decide would strip the City Council of Blackfoot of discretion in the protection of human life.

We have examined appellant's other assignments of error and find them to be without merit. Our decision herein also makes unnecessary any consideration of respondent's contention that the previous actions of appellant in agreeing to a program to alleviate the alleged hazards in the building has estopped appellant from now demanding the issuance of the license without compliance with the three-year program of repairs.

The decision of the trial court is affirmed. Costs to respondent.

DONALDSON, McQUADE and McFADDEN, JJ., concur.

BAKES, Justice (dissenting):

Under a properly drawn ordinance, there is no doubt that the City of Blackfoot could do exactly what the majority opinion has permitted in this case. However, there is nothing in the Blackfoot City Code which authorizes the city to deny the hotel license to the appellant for the reasons that were given in this case. The only requirement in the ordinance for obtaining the license is the payment of a $10.00 license

fee. While the City of Blackfoot, and the majority of this Court, ought to be commended in their efforts to protect human life from the structural and fire hazards which it is believed that the appellant's hotel presented, that concern should have been directed toward enactment of an ordinance which authorizes city officials to refuse a license upon those grounds. To say the city code "impliedly" authorizes such action in effect gives the city officials, through their ability to withhold the license on grounds not set forth in the ordinance, complete, undefined and unlimited power over the operation of hotels in the city. When the majority say that to deny the city this power "would strip the city council of Blackfoot of discretion in the protection of human life," they do not address themselves to the issue before us— whether the conditions for granting or denying a hotel license must be set out in the ordinance so that there can be some yardstick by which the hotel's obligation can be measured. These conditions must be set forth in the ordinance before a license can be denied. McQuillan, Municipal Corporations, 3d Ed., § 26.05; State v. Dade County, 120 So.2d 625 (Fla.App.1960). As stated in Anders v. Town of Danville, 45 Ill.

App.2d 104, 195 N.E.2d 412 (1964), in a case in which a resolution of the town's electors had authorized the supervisor to "license, regulate and direct the locations" of all junkyards in the town, the supervisor had no authority to refuse a license to a junkyard because "[t]he [resolution] fails in all respects to set the necessary standards and under the same the Supervisor was powerless to refuse a license." (At 416).

> "The right to use one's property in a lawful manner is within the protection of subdivision (1) of the 14th Amendment of the Constitution of the United States and Article I, Sec. 13 of the Idaho Constitution providing that no person shall be deprived of life, liberty, or property without due process of law." O'Connor v. City of Moscow, 69 Idaho 37, 42–43, 202 P.2d 401, 404 (1949).

Placing such unfettered discretion in the hands of an executive branch of government is a denial of due process. Smith v. Ladner, 288 F.Supp. 66 (D.C.S.C.Miss. 1968). To hold otherwise is to retreat from the rule of law to the rule of men, something which our constitutional system of justice has abhorred from its inception.