# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37209

| | | |
|---|---|---|
| STEVEN LEE EDDINS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | Boise, November 2010 Term |
| | ) | |
| v. | ) | 2010 Opinion No. 119 |
| | ) | |
| CITY OF LEWISTON, an Idaho municipal corporation, | ) ) | Filed: November 26, 2010 |
| | ) | Stephen W. Kenyon, Clerk |
| Respondent. | ) | |
| _____ | ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Nez Perce County. The Honorable Jeff M. Brudie, District Judge.

The decision of the district court is reversed.

John C. Mitchell, Lewiston, for appellant.

Don L. Roberts, Lewiston, for respondent.

_____

J. JONES, Justice.

Steven Lee Eddins appeals the district court's decision upholding the City of Lewiston's determination that he is prohibited from replacing recreational vehicles currently located in his manufactured home park. We reverse.

## I.
## Factual and Procedural Background

Steven Lee Eddins has owned and operated a manufactured home park in Lewiston, Idaho, since 2000. Eddins has continuously rented out a combination of standard mobile home spaces and recreational vehicle spaces to various tenants.[1] Eddins has a license to operate a

---

[1] While Eddins has only owned the property since 2000, the record indicates the park has been in existence since the 1940's or 50's and has always been used for the rental of spaces for manufactured homes and recreational vehicles. It appears the park was originally designed for such purpose because several of the spaces used to store recreational vehicles are too small to house a manufactured home. Additionally, Eddins asserts that the park is designed in such a way that it cannot reasonably be restructured to allow for the placement of manufactured homes in the spaces that are currently used for recreational vehicles.

1

manufactured home park, but does not have a license to operate a recreational vehicle park. In 2006, the City of Lewiston passed Ordinance 4398, which for safety reasons,[2] prohibits recreational vehicles from being located in manufactured home parks. More specifically, section 23-14(b) of the Lewiston City Code was amended to read:

> Unit types permitted:
>
> Manufactured home parks shall contain a minimum of seventy five (75) percent Class A Manufactured Homes. Up to twenty five (25) percent of a parks [sic] total units may be Class B Manufactured Homes. A Conditional Use Permit must be obtained in order to increase the ratio of Class B Manufactured Homes. Class C Manufactured Homes shall not be permitted.

Lewiston City Code section 23-14(b). Pursuant to the new regulations, recreational vehicles are not among the types of units permitted in manufactured home parks, as they are not considered Class A or Class B manufactured homes.

However, the new regulations provide a grandfather right for manufactured home parks that existed prior to the enactment of the ordinance in 2006. Section 23-17(a) provides:

> Manufactured home parks in existence or under development as of the effective date of this ordinance shall be permitted to continue as an established land use regardless of zone but shall be exempt from the standards of 23-14, except as stated in this section.

Lewiston City Code section 23-17(a). Section 23-17(d) of the code then goes on to specify the type of replacement units allowed under the grandfather right:

> Replacement units in manufactured home parks developed prior to the effective date [of the ordinance] may be Class A or Class B units, except that the mix of Class A and B units existing as of the effective date may not move further from compliance with Section 23-14(b).

Lewiston City Code section 23-17(d).

In 2008, Eddins applied for a permit from the Lewiston Community Development Department to allow one of his current tenants, who had been renting the same space for several years, to replace an existing recreational vehicle with a newer recreational vehicle. The Department subsequently sent Eddins a letter informing him that his permit had been denied, and that he was prohibited from placing additional recreational vehicles in his park under the new ordinance.

---

[2] During the hearing before the Planning and Zoning Commission, the Commissioner mentioned that the goal of the ordinance was to gradually eliminate the placement of recreational vehicles in manufactured home parks for safety reasons. The Commissioner specifically mentioned that recreational vehicles do not allow "the proper ingress and egress for fire."

Eddins appealed the Department's decision to the Lewiston Planning and Zoning Commission, arguing that he has a grandfather right to replace existing recreational vehicles with new or substitute recreational vehicles. After an informal hearing, the Commission upheld the Department's decision, concluding that Eddins' grandfather right under the new regulations only permits him to keep existing recreational vehicles in the park, but does not allow him to bring in additional or substitute recreational vehicles. Thereafter, Eddins appealed to the Lewiston City Council, where the Commission's decision was upheld. Eddins then filed a petition for judicial review with the district court, arguing that he has a due process right to continue using his park in the same way in which he did prior to the passage of the ordinance as long as he does not improperly expand the use. The district court upheld the Commission's decision, finding substantial evidence in the record to support the Commission's interpretation of the grandfather provision in the city code.[3] Eddins timely appealed the decision to this Court.

## II.
## Issues on Appeal

I.    Whether the act of replacing existing recreational vehicles with new recreational vehicles in Eddins' manufactured home park constitutes a continuation of the nonconforming use that is protected by due process?

II.   Whether Eddins has demonstrated that his substantial rights have been prejudiced?

## III.
## Discussion

### A.    Standard of Review

Idaho's Local Land Use Planning Act (LLUPA) allows an applicant who has been denied a land use application by a governing board to seek judicial review under the procedures provided in the Idaho Administrative Procedure Act (APA), after exhausting all remedies under the local ordinance. I.C. § 67-6519. When reviewing the decision of a district court acting in its appellate capacity under the APA, this Court reviews the agency record independently of the district court's decision. *Price v. Payette Cty. Bd. of Cty. Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998). The Court does not substitute its judgment for that of the agency as to the

---

[3] The district court, in its written opinion, indicates that Eddins never raised the issue of whether his constitutional due process rights had been violated before the district court. However, the record contains the brief Eddins submitted to the district court, which primarily consists of an argument that his due process rights were violated by the City's action. Because the district court did not recognize Eddins' due process argument, it focused solely on whether the Commission had properly applied the grandfather provision in the city ordinance without addressing the broader question of whether that application violates Eddins' due process rights.

weight of the evidence presented. I.C. § 67-5279(1). Instead, we defer to the agency's findings of fact unless they are clearly erroneous. *Price*, 131 Idaho at 429, 958 P.2d at 586. "In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record." *Id.*

The agency's decision may only be overturned where its findings: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). The party contesting a governing board's decision must first demonstrate that the board erred in a manner specified in Idaho Code section 67-5279(3), and then the party must also demonstrate that a substantial right has been prejudiced. I.C. § 67-5279(4).

**B.      Due Process**

Eddins' sole argument on appeal is that his due process rights have been violated by the City's action. Eddins argues that he has a due process right to continue operating his park in the same manner in which he did prior to the passage of the new city ordinance. Specifically, Eddins asserts that this due process protection applies not only to existing recreational vehicles in the park, but also applies to the overall use of the property, including the replacement of recreational vehicles. The City, on the other hand, argues that Eddins does not have a right to substitute new recreational vehicles because the grandfather right in the Lewiston Ordinance only allows existing vehicles to be replaced with Class A or Class B manufactured homes. Further, the City argues that Eddins' due process right attaches only to the recreational vehicles that were on the property at the time the ordinance was passed and does not attach generally to the placement of recreational vehicles on the property.

This Court has previously recognized that the due process clauses of the U.S. Constitution and our State Constitution protect an individual's right to continue a "nonconforming use." *O'Connor v. City of Moscow*, 69 Idaho 37, 42−43, 202 P.2d 401, 404−05 (1949). A "nonconforming use" is defined as "a use of land which lawfully existed prior to the enactment of a zoning ordinance and which is maintained after the effective date of the ordinance even though not in compliance with use restrictions." *Baxter v. City of Preston*, 115 Idaho 607, 608–09, 768 P.2d 1340, 1341–42 (1989). As a general rule, due process requires that

4

a nonconforming use be allowed to continue after a new zoning ordinance is enacted. *Id.*

However, the right to continue a nonconforming use is not without limitation. As the Court has previously noted, this right "protects the owner from abrupt termination of what had been a lawful condition or activity on the property. The protection does not extend beyond this purpose." *Id.* (quoting *Bastian v. City of Twin Falls*, 104 Idaho 307, 309, 658 P.2d 978, 980 (Ct. App. 1983)). The general concept underlying this zoning policy is that "nonconforming uses should not be allowed to expand and eventually should be eliminated." *Ada County v. Schemm*, 96 Idaho 396, 398, 529 P.2d 1268, 1270 (1974). As such, a protected nonconforming use may be lost if it is enlarged or expanded in violation of a valid zoning ordinance. *Baxter*, 115 Idaho at 609, 768 P.2d at 1342. In determining whether a nonconforming use has been enlarged or expanded, this Court has adopted a flexible approach that focuses on the character of the alleged enlargement or expansion on a case-by-case basis. *Id.* When conducting this analysis, we focus on the particular character of the nonconforming use and whether the use was the same before and after the passage of the zoning ordinance. *Id.* While it is impermissible to expand or enlarge a nonconforming use, the "mere intensification of a nonconforming use does not render it unlawful." *Id.* Because the parties agree that Eddins has a protected nonconforming use,[4] the sole issue before this Court is whether the act of replacing an existing recreational vehicle with a new recreational vehicle in Eddins' manufactured home park constitutes a continuation of the nonconforming use that is protected by due process, or alternatively, constitutes an enlargement or expansion of that use that is not protected by due process.

Due process protects the fundamental or primary use of the property prior to the enactment of a new zoning ordinance; therefore, a nonconforming use is not impermissibly enlarged or expanded until there has been some change in the fundamental or primary use of the property. For example, in *Lewis-Clark Memorial Gardens, Inc. v. City of Lewiston*, the Court dealt with property that was being used to operate a private cemetery business. 99 Idaho 680, 680, 587 P.2d 821, 821 (1978). The property was later annexed by the City of Lewiston, and thus

---

[4] In its brief, the City writes:

> The Appellant asserts he has a "grandfathered" right to continue to have those recreational vehicles in his manufactured home park even though a 2006 city ordinance prohibits the placement of recreational vehicles in a manufactured home park. The Respondent does not deny this "grandfathered" right. All recreational vehicles actually in the manufactured home park on the effective date of the ordinance may continue to remain in the park.

became subject to a city ordinance that prohibited the operation of a cemetery on the property. *Id*. After the property was annexed, the property owner applied for a conditional use permit to construct five hundred concrete crypts on the property. *Id*. at 681, 587 P.2d at 822. Prior to becoming subject to the ordinance, the only concrete pouring operation that had occurred on the property was the occasional pouring of grave markers, which was "a simple one man operation." *Id*. The City granted the property owner a building permit, but because several property owners objected to the on-site construction of the crypts, the City limited the number of crypts that could be stored on-site at one time and set an expiration date on the permit. *Id*. The property owner subsequently sought the City's permission to construct additional crypts other than the ones authorized in the original permit. *Id*. The City denied the request, and the property owner petitioned for judicial review. *Id*. On appeal to the district court, the City argued that the on-site construction of the crypts was an impermissible enlargement or extension of the existing nonconforming use. *Id*. The district court found the nonconforming use had not been expanded or enlarged, stating:

> The pouring of crypts above ground for subsequent burial for interment of the human dead did not result in any basic change in the fundamental or primary use of the real property in question, such fundamental or primary use remaining the same, that is, the conduct of a private cemetery business for interment of the human dead, and the pouring of such crypts in the manner done by plaintiff is an ordinary adjunct of, or integral, although not absolutely necessary, part of the operation of private cemetery businesses.

*Id*. On appeal, this Court affirmed the district court's decision. *Id*.

Furthermore, the reasonable substitution of equipment or materials used in a business that is protected as a nonconforming use does not generally constitute an impermissible expansion or enlargement as long as the fundamental or primary use remains the same. In *Gordon Paving Co. v. Blaine Cty. Bd. of Cty. Comm'rs*, we held that a paving company's act of replacing obsolescent equipment with more modern equipment for a business that was protected as a nonconforming use did not constitute an enlargement or expansion of that use. 98 Idaho 730, 731, 572 P.2d 164, 165 (1977). In that case, a paving company operated a rock crusher and asphalt plant on property that was later zoned as a low-density residential area. *Id*. After the new zoning ordinance was enacted, the paving company applied for a variance permit that would allow it to modernize its plant. *Id*. The County authorized the permit, but conditioned it on the removal of the company's entire operation within three construction seasons. *Id*. Pursuant to the

6

permit, the paving company modified its existing plant by replacing obsolescent equipment with more efficient equipment. *Id*. The paving company operated its plant as modified until the time the variance permit was set to expire, at which point it brought proceedings in district court to challenge the validity of the permit. *Id*. The district court ultimately upheld the validity of the variance permit and its terms. *Id*. On appeal, the County argued that the company's modifications to its plant constituted an enlargement or expansion of the existing use. *Id*. at 731−32, 572 P.2d at 165−66. However, this Court held that that the paving company's action merely involved "a reasonable substitution of more modern facilities for obsolescent equipment." *Id*. at 732, 572 P.2d at 166. The Court went on to state, "[g]enerally, such a substitution does not constitute an enlargement or expansion." *Id*. Finally, the Court pointed out that "[b]oth before and after the modifications [the paving company] was engaged in asphalt production by the same basic process. As a matter of law, no change of use has occurred." *Id.* at 732 n.1, 572 P.2d at 166 n.1.

In this case, the act of replacing an existing recreational vehicle with a new recreational vehicle in the manufactured home park is a continuation of Eddins' nonconforming use that is protected by due process. While the City argues that Eddins' due process right to a nonconforming use attaches only to the recreational vehicles that were on the property at the time the ordinance was passed, *Lewis-Clark Memorial Gardens* makes clear that a nonconforming use protects the "fundamental or primary use of the real property in question." 99 Idaho at 681, 587 P.2d at 822. The fundamental or primary use of Eddins' real property—both before and after the ordinance was passed—was to rent spaces for both manufactured homes and recreational vehicles. Consequently, the due process clauses of the Idaho and U.S. Constitutions protect Eddins' ability to continue the fundamental or primary use of his real property.

The act of replacing an existing recreational vehicle with a new recreational vehicle is not an expansion or enlargement of Eddins' nonconforming use. In *Lewis-Clark Memorial Gardens*, this Court found that the property owner's fundamental or primary use of the real property was to operate a cemetery business and the construction of additional crypts did not constitute an enlargement or expansion of the original nonconforming use because it did not change the fundamental use of the property. *Id.* Similarly, the act of replacing existing recreational vehicles with new recreational vehicles does nothing to change the fundamental use of the property. In fact, such an act is actually less expansive than the act this Court permitted in *Lewis-Clark*

7

*Memorial Gardens* because certainly there is a greater change to the physical environment and to the intensity of use by adding five hundred additional crypts to a property than there would be by allowing the replacement of one recreational vehicle by another.

Furthermore, in *Gordon Paving*, the Court specifically found that the reasonable substitution of more modern equipment for older equipment in a business that is protected as a nonconforming use does not constitute an enlargement or expansion of the nonconforming use. The facts of that case are substantially similar to the facts of this case because Eddins' tenant is simply seeking to replace an older recreational vehicle with a newer recreational vehicle and the nature of his business will remain the same after the substitution. Thus, such a substitution does not constitute an expansion or enlargement of the nonconforming use.

The City correctly argues that allowing Eddins to replace the recreational vehicles will prolong the nonconforming use, and likely will make it more difficult to satisfy the safety goals of the ordinance by slowing the elimination of the business. However, the goal of quickly eliminating the combination of manufacturing homes and recreational vehicles does not trump the due process protection afforded to Eddins' nonconforming use.

Therefore, replacing an existing recreational vehicle with a new recreational vehicle in Eddins' manufactured home park constitutes a continuation of the nonconforming use that is protected by due process. For that reason, we find the City's action in this case violates Eddins' due process right to continue a nonconforming use.

### C.      Substantial Right

Next, we must also determine whether Eddins has demonstrated that his substantial rights have been prejudiced. I.C. § 67-5279(3). This is a relatively easy question in this case because due process rights are substantial rights. *See Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 610 (1974) ("Due process of law guarantees no particular form of procedure; it protects substantial rights."). Thus, because Eddins has demonstrated that his due process rights have been violated by the City's actions, he has similarly demonstrated that a substantial right has been prejudiced for the purposes of Idaho Code section 67-5279(3).

### IV.
### Conclusion

We reverse the decision of the district court upholding the City's determination that Eddins is prohibited from replacing existing recreational vehicles with new recreational vehicles in his

8

manufactured home park. Costs are awarded to Eddins.

Chief Justice EISMANN, and Justices BURDICK, W. JONES, and HORTON CONCUR.