# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CT-00286-SCT

*CLEVELAND MHC, LLC*

*v.*

*CITY OF RICHLAND, MISSISSIPPI AND*
*MAYOR & BOARD OF ALDERMEN OF*
*THE CITY OF RICHLAND*

## ON WRIT OF CERTIORARI

DATE OF JUDGMENT:                01/28/2013
TRIAL JUDGE:                     HON. JOHN HUEY EMFINGER
COURT FROM WHICH APPEALED:       RANKIN COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:         MICHAEL VERDIER CORY, JR.
                                 DALE DANKS, JR.
ATTORNEY FOR APPELLEES:          JOSHUA J. WIENER
NATURE OF THE CASE:              CIVIL - OTHER
DISPOSITION:                     THE JUDGMENT OF THE COURT OF
                                 APPEALS IS AFFIRMED. THE JUDGMENT
                                 OF THE RANKIN COUNTY CIRCUIT
                                 COURT IS REVERSED AND RENDERED -
                                 05/14/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     The City of Richland began enforcing a zoning ordinance that regulated

nonconforming uses and prohibited Cleveland MHC, LLC from replacing mobile homes that

were removed from its property.  The Rankin County Circuit Court upheld the City's

decision, and Cleveland MHC appealed. The Court of Appeals reversed. The City petitioned the Court for certiorari, which we granted.

**Facts and Procedural History**

¶2. Cleveland Mobile Home Community has been operating in Rankin County since the 1950s. It includes spaces for 138 mobile homes and seventeen campers or recreational vehicles, and the spaces are rented to tenants. When the City of Richland incorporated in 1975, the mobile-home park became part of the City and was zoned "I-1, Light Industrial Zoning." The City's ordinances prohibit industrial property being used for residential purposes. Thus, use of the property as a mobile-home park was a nonconforming use. Regarding nonconforming uses, the City ordinances provide that nonconforming lots, uses, or structures are allowed "to continue until they are removed" but the "survival" of the nonconformity is not encouraged. Further, nonconformities "shall not be enlarged upon, expanded[,] or extended, [nor] be used as grounds for adding other [s]tructures or uses prohibited elsewhere in the same district."

¶3. The mobile-home park was a nonconforming use for many years, and mobile homes were removed from the property and replaced over the years. Cleveland MHC, LLC purchased the mobile-home park in 2008 and claims that it received assurance from the City's zoning administrator that it would be allowed to continue operating and moving mobile homes in and out without restriction. However, in April 2011, apparently due to deterioration of the property, the City informed Cleveland MHC that it would begin enforcing the zoning ordinance and, when an existing mobile home was removed, it could

2

not be replaced. Cleveland MHC appealed to the Board of Aldermen in July 2011. The Board upheld the City's decision and voted unanimously to adopt the following resolution: "That in the event a mobile home or similar vehicle is removed from its then present location in the Cleveland Mobile Home Park, another mobile home or similar vehicle shall not be placed on the vacated site." Cleveland MHC filed an appeal in the Circuit Court of Rankin County; the circuit court held that the Board's action was not in error.

¶4. Cleveland MHC appealed, and the case was assigned to the Court of Appeals. The Court of Appeals held that the City's interpretation of the ordinance was arbitrary and capricious and that it deprived Cleveland MHC of its "constitutional right to enjoy [its] property." *Cleveland MHC, LLC v. City of Richland*, 2014 WL 4067207, *6 (¶ 32) (Miss. Ct. App. Aug. 19, 2014). The Court of Appeals held that the nonconforming use ordinance applied to the "mobile-home park as a whole," not to individual lots within the park, such that, as long as Cleveland MHC operated as a mobile-home park and did not expand, its operation was a permitted use. *Id.* at *6 (¶ 30). The City petitioned the Court for certiorari, which we granted. The Mississippi Manufactured Housing Association and the Home Builders Association of Mississippi both filed amicus briefs.[1]

## Standard of Review

---

[1] The Mississippi Manufactured Housing Association and the Home Builders Association of Mississippi both urge the Court to affirm the judgment of the Court of Appeals. The Manufactured Housing Association argues that a reversal would have devastating effects on manufactured-housing parks across Mississippi and claims that the City's actions, if allowed, would be an unconstitutional taking for which Cleveland MHC must be compensated. The Home Builders Association asserts that the Court of Appeals' viewing the property as a whole is the only logical interpretation of the ordinance, and reversal would cause "widespread uncertainty" for all multifamily housing in Mississippi.

¶5.    "In examining a zoning order issued by a city council, the circuit court sits as an appellate court with a restricted scope of judicial review." *Red Roof Inns, Inc. v. City of Ridgeland*, 797 So. 2d 898, 900 (¶ 6) (Miss. 2001) (citing *Ridgewood Land Co. v. Moore*, 222 So. 2d 378, 379 (Miss. 1969)). A zoning order will not be reversed unless it is "arbitrary, capricious, discriminatory, beyond the legal authority of the City Board[,] or unsupported by substantial evidence." *Id.* The appellate courts should not consider "whether it would adopt the ordinance in question; instead it should determine whether the City's decision to adopt the ordinance is reasonable and supported by substantial evidence." *Red Roof Inns*, 797 So. 2d at 900 (¶ 6) (citing *City of Biloxi v. Hilbert*, 597 So. 2d 1276, 1280-81 (Miss. 1992)).

**Analysis**

¶6.    The City claims that the Court of Appeals failed to apply the correct standard of review and erroneously substituted its own interpretation of the ordinance. Cleveland MHC argues that the Court of Appeals correctly held that it has a constitutionally protected right to continue the lawful use of its property. Cleveland MHC claims that its replacing existing mobile homes with new ones is "a lawful continuation of the property's nonconforming use, not an enlargement of that use." The issue at hand is a matter of first impression for the Court.

**I. Whether the Court of Appeals applied the correct standard of review.**

¶7.    As set forth above, an appellate court reviewing a zoning ordinance employs "a restricted scope of judicial review," and the ordinance should be upheld if it is not "arbitrary, capricious, discriminatory, beyond the legal authority of the City Board[,] or unsupported by

4

substantial evidence." ***Red Roof Inns***, 797 So. 2d at 900 (¶ 6). The City argues that the Court of Appeals failed to observe the correct standard of review, and instead, adopted a "reasonable interpretation of the ordinance" standard. The City cites the following from the Court of Appeals' opinion:

> We conclude that the reasonable interpretation of the ordinance is to construe the nonconforming use to relate to the mobile-home park as a whole. As long as the park is operated as such, without expansion, it is a permitted use. The City's resolution, on the other hand, seeks to transform the nonconforming use to a pad-by-pad use and to destroy it by attrition. We next consider whether such an interpretation is a permissible one under our standard of review.

***Cleveland MHC***, 2014 WL 4067207, at *6 (¶ 30). First, the Court of Appeals was correct in considering whether the interpretation of the ordinance was "reasonable," because appellate courts are charged with determining "whether the City's decision to adopt the ordinance is reasonable and supported by substantial evidence." ***Red Roof Inns***, 797 So. 2d at 900 (¶ 6) (citing ***Biloxi***, 597 So. 2d at 1280-81). Second, in that portion of the opinion, the Court of Appeals was considering whether the ordinance, as interpreted by the City, was constitutional. ***Cleveland MHC***, 2014 WL 4067207, at **3-6 (¶¶ 14-30). Constitutional issues and questions of law are reviewed de novo. ***Pascagoula Sch. Dist. v. Tucker***, 91 So. 3d 598, 603 (¶ 8) (Miss. 2012); ***Thoms v. Thoms***, 928 So. 2d 852, 855 (¶ 9) (Miss. 2006).

¶8. After reaching the constitutional issue, the Court of Appeals proceeded to consider the City's interpretation of the ordinance under the appropriate standard of review. ***Cleveland MHC***, 2014 WL 4067207, at *6 (¶¶ 31-32). Determining that the City's interpretation was arbitrary, capricious, and illegal because it "deprive[d] the property owner of his constitutional right to enjoy his property[,]" the Court of Appeals reversed the circuit

court and rendered judgment in favor or Cleveland MHC. *Id.* at **6, 8 (¶¶ 32, 40). The Court of Appeals applied the correct standard of review.

> **II. Whether the Court of Appeals correctly held that the City's interpretation of the nonconforming use ordinance was arbitrary, capricious, and illegal.**

¶9.     The Court of Appeals held that the nonconforming use ordinance applied to the "mobile-home park as a whole," not to individual lots within the park, such that, as long as Cleveland MHC used the property as a mobile-home park and did not expand, its operation was a permitted use. *Id.* at *6 (¶ 30). The City asserts that the Court of Appeals' decision effectively gives Cleveland MHC a perpetual right to continue its nonconformity. The City claims that the Court of Appeals' decision is not in line with the majority of courts that have ruled on the issue. However, as the Court of Appeals discussed, several courts have come down on the opposite side of the issue.[2]

¶10.    We agree with the Court of Appeals that the nature of the nonconforming use must be defined before the issue can be resolved. *See Cleveland MHC*, 2014 WL 4067207, at *4 (¶ 24) (citing *Jones v. Lutken*, 62 So. 3d 455, 458-49 (¶ 16) (Miss. Ct. App. 2011)). Cleveland MHC owns the entire property and operates a mobile-home park thereon. The individual lots in the mobile-home park are rented to tenants; the lots are not owned individually. Thus, the nonconforming use belongs to Cleveland MHC, and the

---

[2] The City accuses the Court of Appeals of not giving the Alabama Supreme Court case of *City of Foley v. McLeod*, 709 So. 2d 471 (Ala. 1998), "the weight that it is due." We note that, while other courts may have decided the issue, we have not, and neither the Court of Appeals nor the Supreme Court is required to give any weight to the decision of another state's court.

6

nonconformity is Cleveland MHC's use of the land as a mobile-park home. While the individual structures thereon are nonconformities in themselves, they make up parts of the whole. Therefore, we hold that the Court of Appeals correctly determined that the nonconforming use relates to the mobile-home park as a whole, not to individual lots. *Cleveland MHC*, 2014 WL 4067207, at \*\*5-6 (¶¶ 27-30) (discussing *Stagecoach Trails MHC, LLC v. City of Benson*, 307 P.3d 989 (Ariz. 2013); *Eddins v. City of Lewiston*, 244 P.3d 174 (Idaho 2010); *Sunset Estate Properties, LLC v. Village of Lodi*, 2013 WL 6021470 (Ohio Ct. App. 2013), *aff'd*, *State ex rel. Sunset Estate Properties, LLC v. Lodi*, 2015 WL 1035632, __ N.E. 3d ___ (Ohio 2015)).

¶11. The City claims that "it has long been a standard feature of municipal zoning law in Mississippi and elsewhere that a property owner cannot rebuild or replace one non-conforming structure with another," citing *Palazzola v. City of Gulfport*, 52 So. 2d 611 (Miss. 1951), and *Pelham Esplanade, Inc. v. Board of Trustees*, 565 N.E. 2d 508 (N.Y. Ct. App. 1990). These cases are distinguishable. The issue in *Palazzola* and *Pelham Esplanade* was whether nonconformities could be replaced after they burned down or were destroyed. The nonconformity at issue was the *structure* itself. Once the structure was destroyed, it could not be rebuilt. In the instant case, the nonconformity is the *use of the property* as a mobile-home park, and that use has not been destroyed or changed.

¶12. Because the nature of the nonconforming use is Cleveland MHC's use of the property as mobile-home park, we hold that the Court of Appeals was correct in determining that the City's interpretation of the nonconforming use ordinance to apply on a lot-by-lot basis is

arbitrary, capricious, and illegal. *Cleveland MHC*, 2014 WL 4067207, at *6 (¶ 32). First, the City's resolution deprives Cleveland MHC of its constitutional right to enjoy its property, as the resolution effectively would destroy the mobile-home park – as well as Cleveland MHC's investment – by attrition. Cleveland MHC relied on the City's course of conduct, and possibly assurance from the zoning administrator, when it purchased the property with the understanding that it could continue operating as the mobile-home park had in the past. The mobile-home park had been in operation for more than fifty years, much of that time subject to the zoning ordinance and operating as a nonconforming use. For more than thirty years, the City did not enforce the nonconforming use ordinance as to each pad on the property. For three years under the new ownership, the City said nothing about the removal and replacement of mobile homes on the property.[3] The Court of Appeals correctly noted that "[a] citizen's right to be protected in 'the lawful use of his property is one of the most sacred rights reserved to him under ourConstitution.'" *Cleveland MHC*, 2014 WL 4067207, at *3 (¶ 14) (quoting *Fitzhugh v. City of Jackson*, 132 Miss. 585, 97 So. 190, 192 (1923)). *See* Miss. Const. art. 3, §§ 14, 17; U.S. Const. amend. XIV, § 1.

¶13.    Second, particularly in light of the City's course of dealing for decades, the resolution is arbitrary and capricious. An action is arbitrary "when it is done without adequately determining principle; not done according to reason or judgment, but depending upon the

---

[3] The change of ownership is of no moment, because "the right to continue a nonconforming use is not a personal right but one that runs with the land." *Heroman v. McDonald*, 885 So. 2d 67, 71 (Miss. 2004) (citing *Faircloth v. Lyles*, 592 So. 2d 941, 945 (Miss. 1991)). "[T]his right may not be terminated or destroyed by change of ownership of property alone." *Id.*

will alone . . . implying either a lack of understanding of or a disregard for the fundamental nature of things." *Harrison Cnty. Bd. of Supervisors v. Carlo Corp., Inc.*, 833 So. 2d 582, 583 (¶ 6) (Miss. 2002) (quoting *McGowan v. Miss. State Oil & Gas Bd.*, 604 So. 2d 312, 322 (Miss. 1992)). "An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles." *Id.* Since 1975, the City has allowed mobile homes to be moved on and off the property, and the City has not interpreted or enforced the ordinance on a lot-by-lot basis. The decision to do so now seems to be without reason and implies a disregard for the surrounding facts and settled controlling principles. Thus, we agree with the Court of Appeals that the City's interpretation of the nonconforming use ordinance to apply on a lot-by-lot basis, after more than thirty years of not enforcing the ordinance in that manner, was arbitrary and capricious.

**Conclusion**

¶14. While the Court applies "a restricted scope of judicial review" to zoning orders, reversal is appropriate when the zoning order is "arbitrary, capricious, discriminatory, beyond the legal authority of the City Board[,] or unsupported by substantial evidence." *Red Roof Inns*, 797 So. 2d at 900 (¶ 6). The City's interpretation of the nonconforming use ordinance in its July 2011 resolution was both arbitrary and capricious and violates Cleveland MHC's constitutional right to enjoy its property. We affirm the judgment of the Court of Appeals. The decision of the Rankin County Circuit Court is reversed and rendered.

9

¶15.   THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT IS REVERSED AND RENDERED.

WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR.